Reginald NAPOLEON, Plaintiff,

v.

XEROX CORPORATION, Defendant.

Civ. A. No. N–85–526 (RCZ).

United States District Court,
D. Connecticut.

March 26, 1987.

Peter A. Kelly, New Haven, Conn., for plaintiff.

Paul L. Bressan, Rita Hernandez, Kelley, Drye & Warren, New York City, Sari B. Jaffe, Taggart D. Adams, Kelley Drye & Warren, Stamford, Conn., for defendant.

### RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS

ZAMPANO, Senior District Judge.

In this action, filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and state tort law, the plaintiff alleges that the defendant, Xerox Corporation, discriminated against him by, *inter alia,* failing to provide adequate training for him, refusing to promote him, and wrongfully discharging him. As a consequence, he seeks reinstatement, compensatory and punitive damages, and attorney's fees.

The moving papers indicate the plaintiff, a black male, was employed by Xerox as a computer operator from June 1980 to October 1983. He contends that, despite his excellent work record, Xerox denied him entry into certain training programs, failed to transfer or promote him to a number of positions, and wrongfully terminated him. Subsequent to his discharge, he filed a charge with the Equal Employment Opportunity Commission and, on August 5, 1985, the agency issued him a right to sue letter. On November 6, 1985, the plaintiff instituted the instant action, setting forth the identical facts in support of relief under Title VII (Count One), § 1981 (Count Two), and state law (Count Three).

Defendant now moves for partial judgment on the pleadings, pursuant to Fed.R. Civ.P. 12(c), arguing 1) that plaintiff's sole cause of action must be based on a violation of Title VII, thereby precluding relief under § 1981;[1] 2) that, even assuming his § 1981 claim is viable, it is time-barred; and 3) that the cause of action for wrongful discharge grounded on state law is preempted by the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. § 46a–51 *et seq.*

### I. EXCLUSIVITY OF TITLE VII

There is a split of authority concerning whether Title VII provides the exclusive remedy for discriminatory employment practices. Some courts adhere to a rule that, unless separate and distinct rights are being vindicated, an aggrieved employee may not seek relief by way of the concurrent assertion of a Title VII claim with a claim based upon a violation of a post-civil war statute. For example, with respect to a claim premised on 42 U.S.C. § 1981 along with a cause of action anchored on Title VII, the Fifth Circuit has adopted the principle that "consideration of an alternative claim under § 1981 is necessary only if its violation can be made out on grounds different from those available under Title VII." *Watson v. Ft. Worth Bank & Trust,* 798 F.2d 791, 794 n. 4 (5 Cir.1986); *accord*

---

1. 42 U.S.C. § 1981 provides:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*Page v. U.S. Industries, Inc.*, 726 F.2d 1038, 1041 n. 2 (5 Cir.1984); *Ramirez v. Burr*, 607 F.Supp. 170 (S.D.Tex.1984). In sum, the rationale for the rule is that, when the factual setting of the substantive claims of employment discrimination brought under Title VII parallel those of the claims grounded on § 1981, a plaintiff should not be allowed to circumvent the detailed provisions and structural integrity of Title VII by asserting a concurrent action based on a provision of the Civil Rights Act of 1866.

Several courts have also applied the Title VII exclusivity rule to plaintiffs seeking alternative relief pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. *See, e.g., Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6 Cir.1984) ("Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII"); *Keller v. Prince George's County Dept. of Social Services*, 616 F.Supp. 540, 543–44 (D.Md.1985) (employee may not maintain § 1983 action where alleged discriminatory acts were also covered by Title VII); *Tafoya v. Adams*, 612 F.Supp. 1097, 1104 (D.Colo.1985) (plaintiff's Title VII cause of action precludes relief under §§ 1981 and 1983); *Torres v. Wisconsin Dept. of Health & Social Services*, 592 F.Supp. 922, 930 (E.D.Wisc.1984) (if plaintiff's claims are cognizable under Title VII, the alternative claims under § 1983, § 1985, and § 1986 must be dismissed).

Support for these holdings is found in several Supreme Court decisions. In *Great American Fed. S. & L. Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court considered the question "whether the rights created by Title VII may be asserted within the *remedial* framework of [42 U.S.C.] § 1985(3)." *Id.* at 377, 99 S.Ct. at 2351 (emphasis in original). The Court held that, in the absence of a finding that separate statutory remedies vindicated distinct and different rights in a case involving the same factual elements, a "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 378, 99 S.Ct. at 2352. The Court reasoned that to allow both causes of action would effective-

ly defeat the comprehensive procedural and remedial purposes of Title VII:

> If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law. Section 1985(3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complainant could completely bypass the administrative process, which plays a crucial role in the scheme established by Congress in Title VII.

*Id.* at 375–76, 99 S.Ct. at 2350–51.

In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court concluded that Congress intended to create an exclusive pre-emptive administrative judicial scheme for the redress of federal employment discrimination when it enacted the 1972 amendment to Title VII. Accordingly, it ruled that a federal employee claiming employment discrimination could seek relief only under Title VII, and could not secure additional remedies by asserting a cause of action under § 1981. *Id.* at 835, 96 S.Ct. at 1969. *See also Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 19–20, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981) (detailed, structurally complete statutes providing for express remedies supplant other remedies that might be available under § 1983).

On the other hand, there is impressive authority, in this District and in others, supporting the plaintiff's position in the instant case. In *National Organization For Women v. Sperry Rand Corp.*, 457 F.Supp. 1338 (D.Conn.1978), Judge Clarie determined that an employment discrimination claim brought under Title VII did not effectively displace a concurrent cause of action premised on § 1981 for additional relief. In a reasoned opinion, he concluded that the employee was entitled to seek both *equitable* relief under Title VII and *legal*

relief under § 1981 for the same alleged discriminatory conduct by the defendant.

In *Gunby v. Pennsylvania Electric Co.*, 631 F.Supp. 782 (W.D.Pa.1985), the court rejected the Fifth Circuit's Title VII exclusivity rule, and sustained plaintiff's right to assert employment discrimination claims under § 1981 along with those under Title VII. *See also Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 359 (3 Cir.1984) ("avenues for relief available under Title VII and § 1981 are independent"); *Evans v. Central of Georgia Railroad Co.*, 619 F.Supp. 1364, 1366 (N.D.Ga.1985) ("although somewhat overlapping with Title VII, § 1981 is available to plaintiff as a completely independent remedy").

These holdings rely primarily on the decision in *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), wherein the Supreme Court held that Title VII is not the exclusive remedy for claims of employment discrimination, and that an aggrieved person could pursue remedies under Title VII and § 1981 simultaneously. *Id.* at 460–61, 95 S.Ct. at 1720. The *Johnson* Court stated that:

> Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief.

*Id.* at 459, 95 S.Ct. at 1719; *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974) ("Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination").

After review and careful analysis of the body of law on the issue, the Court is of the opinion that, with respect to the concurrent assertion of claims under Title VII and under § 1981 in an employment discrimination matter, the *Johnson, Sperry Rand,* and *Gunby* line of cases presents the more persuasive approach.

At the outset it is important to note that § 1981, unlike § 1983 and 1985(3), creates substantive rights,[2] as well as provides remedies. As pointed out in *Johnson* and *Alexander*, there is no indication in the legislative history of Title VII that Congress intended to deprive those in private employment of the supplemental benefits already existing under § 1981. Moreover, in *Brown*, the Supreme Court ruled that Title VII is the exclusive remedy for *federal* employees but specifically noted, citing *Johnson*, that "in the context of *private employment* Title VII did not pre-empt other remedies" (emphasis in original), and that the procedures available under Title VII and under § 1981 "augment each other and are not mutually exclusive." 425 U.S. at 833–34.

Finally, defendant's reliance on *Novotny, Tafoya,* and *Day* is misplaced. In *Novotny,* the Supreme Court considered § 1985(3), which as stated prescribes no substantive rights. Based on a review of legislative history, the Supreme Court determined that a § 1985(3) claim should not ride on the coattails of rights created by Title VII. In this context, the Supreme Court found that, where an employee's § 1985(3) claim is so integrated with a cause of action based on Title VII to be unidentifiable as a discrete claim, the Title VII claim preempts the other civil rights claim. Moreover, the *Day* and *Tafoya* cases, involving §§ 1981 and 1983,[3] are fur-

**2.** In *New York Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979), the Supreme Court noted that "[a]lthough the exact applicability of [§ 1981] has not been decided by this Court, it seems clear that it affords no greater substantive protection than Title VII." *Id.* at 584 n. 24, 99 S.Ct. at 1364 n. 24. On the other hand, as stated in *Novotny,* "the passage of Title VII did not work an implied repeal of the substantive rights to contract conferred by [§ 1981]." 442 U.S. at 377, 99 S.Ct. at 2351,

citing *Johnson,* 421 U.S. at 457–61, 95 S.Ct. at 1718–20.

**3.** The *Day* court actually only considered the § 1983 claim, because the Court concluded that plaintiff had abandoned its § 1981 claim during the proceedings. The *Tafoya* court, on the other hand, stated that when "§§ 1981 and 1983 claims are inherently bound up with the Title VII claim, Title VII constitutes the exclusive remedy." *Id.* at 1103, citing *Day,* 749 F.2d at 1204–05.

ther distinguishable because they involve causes of action arising in *public* rather than private employment.[4]

Therefore, this Court concludes that § 1981 liability is coextensive with liability under Title VII, and that the specific remedies provided for in Title VII were not intended to preempt the other available remedies of § 1981.

## II. APPLICABLE LIMITATIONS STATUTE FOR § 1981 ACTIONS

■ The defendant next contends that the plaintiff's § 1981 cause of action is barred by Connecticut's two-year statute of limitations, Conn.Gen.Stat. § 52–584 (Injury to Person or Property).[5] Plaintiff, on the other hand, argues that the appropriate limitations period is Connecticut's three-year statute, Conn.Gen.Stat. § 52–577 (Action Founded Upon Tort).[6]

In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that § 1983 cases are most closely akin to personal injury actions, and therefore, the state statute of limitations for personal injury actions should be applied to all § 1983 actions. *Id.* at 279–80, 105 S.Ct. at 1949.[7] In two reasoned decisions in this District, both Judge Burns and Judge Cabranes determined that, despite the facial appeal to apply Connecticut's two-year limitation period to § 1983 actions, the controlling enactment for § 1983 causes of action is Connecticut's three-year statute of limitations. In effect, both courts concluded that a § 1983 action was more analogous to an intentional tort action, governed by Connecticut's three-year statute of limitations, than a personal injury action based on negligence or reckless or wanton misconduct, regulated by Connecticut's two-year enactment. *DiVerniero v. Murphy,* 635 F.Supp. 1531, 1533–34 (D.Conn.1986) (Burns, J.);[8] *Weber v. Amendola,* 635 F.Supp. 1527, 1531 (D.Conn.1985) (Cabranes, J.).

The question pending before this Court is whether the same statute of limitations guiding § 1983 actions should also apply to § 1981 actions. In a comprehensive opinion the Third Circuit, noting that a "sub-

---

**4.** The Court recognizes that this attempted reconciliation between the mixed signals of the Supreme Court as set forth in *Novotny* and *Johnson* does not explain the Fifth Circuit's approach to the issue. However, even in that Circuit, there appears to be a conflict with respect to the concurrent assertion of Title VII and § 1981 claims. *See Sanders v. Dobbs Houses, Inc.,* 431 F.2d 1097, 1100–01 (5 Cir.1970), *cert. denied,* 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 321 (1971) (specific remedies fashioned by Congress in Title VII do not preempt general remedies provided by § 1981).

**5.** § 52–584. Limitation of action for injury to person or property

No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of a reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such actions are finally closed.

**6.** § 52–577. Action founded upon a tort

No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

**7.** Congress has not set forth a federal statute of limitations for actions under 42 U.S.C. §§ 1981 or 1983. The Court must borrow the most analogous state law statute of limitations, as long as that limitations period is not inconsistent with federal law. *See* 42 U.S.C. § 1988; *Board of Regents v. Tomanio,* 446 U.S. 478, 484–85, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); *Johnson,* 421 U.S. at 462, 95 S.Ct. at 1721. In *Wilson,* the Supreme Court reasoned "[t]he characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983." 471 U.S. at 279, 105 S.Ct. at 1949.

**8.** In *DiVerniero,* Judge Burns turned to the Supreme Court's decision in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) to support the view that § 1983 causes of action are analogous to intentional torts. *See Altieri v. Colasso,* 168 Conn. 329, 332, 362 A.2d 798 (1975) (limiting language of § 52–584, "caused by negligence or by reckless or wanton misconduct," makes this section inapplicable to intentionally inflicted personal injuries).

stantial overlap exists in the types of claims brought under sections 1981 and 1983," held that the same limitations periods should apply to causes of actions under both statutes. *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 120 (3 Cir.1985), *cert. granted,* — U.S. ——, 107 S.Ct. 568, 93 L.Ed.2d 573 (1986) (appeal pending).[9]

Based on the principles established in *Wilson* and the compelling authority of *Goodman,* the Court is convinced that Connecticut's three-year statute of limitations, Conn.Gen.Stat. § 52–577, governs § 1981 actions as well as § 1983 actions. Therefore, defendant's motion to dismiss the second count of the complaint is denied.

## III. COMMON LAW CLAIM OF WRONGFUL DISCHARGE

■ Defendant also moves to dismiss plaintiff's third count which attempts to set forth a separate claim for wrongful discharge grounded on state common law. Relying on *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), plaintiff contends his wrongful discharge constitutes a "violation of public policy" which triggers an independent state law cause of action for discriminatory employment practices.

In *Sheets,* the plaintiff employee alleged that he had been dismissed in retaliation for his insistence that his employer comply with the requirements of a state statute, the Connecticut Uniform Food, Drug and Cosmetic Act ("CUFDCA"), Conn.Gen.Stat. §§ 19–211 *et seq.* Emphasizing that CUFDCA does not provide for a remedy to the dutiful employee who reports a viola-

tion and is subsequently fired by his employer in retaliation, the Supreme Court of Connecticut ruled that the plaintiff could maintain a cause of action for wrongful discharge because the employer's alleged conduct contravened a clear mandate of public policy implicit in CUFDCA. *Id.* at 475, 480, 427 A.2d 385.

However, in the instant case, unlike *Sheets,* the plaintiff has an explicit state statutory remedy for the defendant's alleged misconduct under the comprehensive procedural provisions of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn.Gen.Stat. §§ 46a–51 *et seq.*[10] Under these circumstances, the plaintiff may not circumvent the CFEPA by the assertion of private cause of action. *See Powell v. Feroleto Steel Co.,* 659 F.Supp. 303, 304–305 (D.Conn.1986) (TFGD). As stated in *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 480 A.2d 610 (1984):

> when an allegation is made with respect to a protected category under the Fair Employment Practices Act ..., the exclusive remedy is in the procedures established by the act, and there is no cause of action for a private lawsuit.

*Id.* at 60, 480 A.2d 610. *See also Sullivan v. Board of Police Commissioners,* 196 Conn. 208, 216, 491 A.2d 1096 (1985) (the CFEPA does not provide claimants with a private right of action unless the discriminatory employer is a state agency); *accord Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 647 (1985).

---

**9.** The *Goodman* court recognized, *inter alia,* that a plaintiff can make an allegation of intentional racial discrimination under § 1981 or § 1983 when state action is present. 777 F.2d at 120; *see, supra,* note 8.

**10.** The provisions of the CFEPA that prohibit discriminatory employment practices, Conn. Gen.Stat. §§ 46a–58–81, must be read in conjunction with the CFEPA's provisions for the filing of complaints concerning alleged discriminatory practices with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Conn.Gen.Stat. §§ 46a–82–96. For instance, Conn.Gen.Stat. § 46a–83(a) provides: "After the filing of any discriminatory practice complaint, the chairman of [the CHRO] shall

refer the same to a commissioner or investigator to investigate and if the commissioner or investigator determines after the investigation that there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint, he shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion." If these informal procedures prove unsuccessful, the CHRO must certify the complaint, hold a hearing and order appropriate relief. Conn. Gen.Stat. §§ 46a–84, 46a–86. Thereafter, any party aggrieved by a final order of the CHRO may appeal to the Superior Court. Conn.Gen. Stat. § 46a–95(j).

Accordingly, for the above reasons, the defendant's motion to dismiss the second count of the complaint is denied; the defendant's motion to dismiss the third count of the complaint is granted.

SO ORDERED.