Ricky BROWN, et al., Plaintiffs,

v.

CITY OF ONEONTA, et al., Defendants.

No. 93–CV–349.

United States District Court,
N.D. New York.

Jan. 3, 1996.

Whiteman, Osterman & Hanna, Albany, New York (D. Scott Bassinson, of counsel), for plaintiffs.

Rowley, Forrest, O'Donnell & Hite, P.C., Albany, New York (Brian J. O'Donnell, of counsel), for defendant Hartmark.

Dennis C. Vacco, Attorney General of the State of New York, Albany, New York (Robert A. Siegfried, Asst. Attorney General, of counsel), for state defendants.

Dreyer, Boyajian & Tuttle, Albany, New York (James B. Tuttle, of counsel), for Oneonta defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

In the early morning of September 4, 1992, a 77–year old woman, was allegedly attacked while staying as a guest in the home of a friend outside the City of Oneonta. Based upon the woman's account of the assault, the police suspected the assailant to be a young black male. The New York State Police supervised the investigation, and using dogs, traced the assailant's path to a wooded area at the base of the State University of New York's Oneonta campus (SUCO).

Later on September 4th, Sgt. Shedlock of the Oneonta Police Department contacted Merritt Hunt, a lieutenant with the SUCO Public Safety Office (PSO). Sgt. Shedlock asked Lt. Hunt if SUCO could provide information on black male students to the State Police for purposes of the investigation. Lt. Hunt contacted the Assistant Director of Housing for SUCO who told him such information could be provided. Lt. Hunt also asked John Edmondson, the Director of PSO, to contact Eric Wilson, the Director of the SUCO Computer Center in order to get the information.

On September 4, 1992, Dr. Leif Hartmark, the Vice President of Administration for SUCO, was assigned to be the "Officer of the Day," the person with authority to act on behalf of SUCO's president in his absence. Dr. Hartmark was first alerted of the assault, in his official capacity, at approximate-

ly 2:00 pm on September 4, 1992. Between 3:00 and 3:30 pm Hartmark met with Eric Wilson who informed Hartmark that Lt. Hunt had contacted Wilson requesting a list of all the black male students at SUCO in connection with an official police investigation of an assault in the Town of Oneonta. Allegedly, Wilson emphasized in this meeting that the State Police needed the information by 4:00 pm that day. Wilson allegedly informed Hartmark that SUCO's Public Safety Chief, John Edmondson, was fully informed of the situation and fully authorized release of the list. Although, Dr. Hartmark tried to personally contact Chief Edmondson regarding this matter, he was unable to reach him. Dr. Hartmark also tried to contact Francis Daley, the Vice President of Student Affairs, but was unsuccessful. At approximately 3:30 pm, Dr. Hartmark approved the compilation and release of this list, under his power as Officer of the Day, to SUCO's Office of Public Safety with the understanding that the Officer would release the list to the State Police for use in connection with the assault investigation. As Dr. Hartmark admits, he had no knowledge of how the information would be used by the State Police.

The list generated by the SUCO Computer Center was given to the PSO and was subsequently delivered to defendant Karl Chandler, a State Police investigator. After obtaining this list, the law enforcement officers questioned those individuals on the list in the dorms and at other locations on campus. Law enforcement officials also questioned a number of black persons in and around Oneonta who were not students at SUCO.

On the prior motions, the Court (1) denied defendant Hartmark's and the State defendants' motion to dismiss the Family Educational Rights and Privacy Rights Act (FERPA) claims against defendants Hartmark, Hunt, and Wilson, and held that they were not entitled to qualified immunity; (2) denied the defendants' motion to dismiss the conspiracy claim under 42 U.S.C. § 1985 based on the alleged violations of FERPA; (3) denied the State defendants' motion to dismiss the plaintiffs' claims under Title VI of the Civil Rights Act; (4) granted summary judgment dismissing all Fourth Amendment claims as against all defendants; (5) dis-

missed with leave to replead the equal protection claims; (6) dismissed with leave to replead all 42 U.S.C. § 1981 claims as against all defendants; (7) dismissed all conspiracy claims brought pursuant to 42 U.S.C. § 1985 based on the alleged Fourth Amendment and equal protection claims; (8) dismissed all FERPA claims alleged against the State police and Oneonta law enforcement officials; (9) dismissed all claims for intentional infliction of emotional distress; and (10) dismissed the pendent state law claims brought under New York Civil Rights Law § 40-c and New York Personal Privacy Protection Law §§ 91-99.

Plaintiffs filed an amended complaint which has added 27 new named parties who have asserted Fourth Amendment claims and claims under 42 U.S.C. § 1981, in addition to the claims remaining from the previous motions. In addition, the amended complaint added new defendants from the Otsego County Sheriffs department. Finally, plaintiffs repleaded the equal protection and 42 U.S.C. § 1981 claims.

Of the motions now before the Court, (1) the defendant Leif Hartmark has moved for an order dismissing plaintiffs' equal protection claim pursuant to Rule 12(b)(6), or an order declaring that the claim is barred by the doctrine of qualified immunity; (2) the city of Oneonta defendants have moved pursuant to Rules 12(b)(6) and/or 56 claiming that a) certain claims are barred by the law of the case pursuant to this Court's previous decisions, b) the Fourth Amendment claims are insufficiently pleaded, c) plaintiffs' equal protection, 42 U.S.C. §§ 1981, 1985, 1986, and Title VI claims fail to state a claim, d) the conspiracy claim against the Oneonta police officers should be dismissed, e) the individual Oneonta officers are entitled to summary judgment based on qualified immunity, and f) all claims against the city of Oneonta should be dismissed; (3) the New York State defendants have moved pursuant to Rules 12(b)(6) and/or 56 for substantially the same relief as the Oneonta defendants.

## II. DISCUSSION

### A. Law Of The Case

■ Defendants allege that plaintiffs have repleaded and have sought to relitigate

claims that were dismissed by this Court's decisions on the previous motions in this case. It is the defendants' contention that the "law of the case" doctrine should be applied to the present motions and prevent reconsideration by this Court of issues upon which it has already decided.

■ "The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case' " *DiLaura v. Power Authority of N.Y.*, 982 F.2d 73, 76 (2d Cir.1992) (citations omitted). Reconsideration of a prior decision is discretionary, and the factors that generally compel reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992) (citation omitted). Moreover, the Court notes that the Local Rules provide a mechanism for seeking the reconsideration of a decision of this Court. *See,* L.R. 7.1(g). Accordingly, the Court is disinclined to reconsider a prior decision unless plaintiff has made a proper showing.

In this instance, plaintiffs have made no showing that the controlling law relevant to the issues presented has changed, that new evidence has been uncovered, or that justice plainly warrants reconsideration. Thus, the Court reaffirms its prior holdings with respect to this case as to the issues that the parties may seek to relitigate. In particular, the Court will not revisit its (1) denial of defendant Hartmark's and the State defendants' motion to dismiss the Federal Education and Privacy Rights Act (FERPA) claims against defendants Hartmark, Hunt, and Wilson, and holding that they were not entitled to qualified immunity; (2) denial of the law enforcement defendants' motion for summary judgment on the basis of an alleged qualified immunity; (3) denial of the defendants' motion to dismiss the conspiracy claim under 42 U.S.C. § 1985 based on the alleged violations of FERPA; (4) denial of the State defendants' motion to dismiss the plaintiffs' claims under Title VI of the Civil Rights Act;

and (5) grant of defendants' summary judgment motion dismissing all Fourth Amendment claims as alleged by the then plaintiffs.

**B. Standards On A Motion To Dismiss Pursuant To Rule 12(b)(6) Or For Summary Judgment Pursuant To Rule 56**

■ On a dismissal motion for failure to state a claim the general rule is that the allegations in a plaintiff's complaint are deemed to be true and must be liberally construed in the light most favorable to the plaintiff. *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984) *cert. denied* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A complaint should not be dismissed unless it appears beyond a reasonable doubt that the plaintiff cannot in any way establish a set of facts to sustain her claim which would permit relief. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

If on a motion made pursuant to Rule 12(b)(6) "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56 ..." Fed.R.Civ.P. 12(b)(6). A motion for summary judgment should be granted "if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). There must be more than a "metaphysical doubt as to the material facts." *Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990) *quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). All ambiguities must be weighed in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The parties to this motion have submitted affidavits with exhibits to the Court. Thus, the Court will, where necessary, treat these mo-

tions as if for summary judgment pursuant to Rule 56 and apply the foregoing standards.

## C. Fourth Amendment Claims

As to the Fourth Amendment claims, the Court will consider only those 27 new plaintiffs who were not parties to the action in the previous motions.[1]

■ All personal interaction between law enforcement officers and individual citizens cannot be said to involve seizures. In order to state a claim for relief under the Fourth Amendment, the plaintiffs are required to show that an unreasonable search and seizure occurred. "[O]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The Supreme Court later explained that a seizure has occurred only when, in light of all the circumstances surrounding the incident, the reasonable person would not feel free to leave. *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Under the applicable standard, "a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877. Examples of a show of authority which could indicate a seizure are "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877. However, the Court is mindful that "[e]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991).

The plaintiffs now claim that 27 additional individuals were deprived of their Fourth Amendment rights to be free from unreasonable search and seizure by the named Oneonta Police Officers, SUCO Public Safety Officers, and State Police Officers, and all other unidentified officers of these three organizations. The allegations of Fourth Amendment violations, set forth in the second amended complaint, generally are vague and conclusory. The Court finds that only 5 plaintiffs: Darnell Lemons, Ronald Jennings, Felix Francis, Vincent Quinones, and Laurence Plaskett have alleged a claim that can survive a motion to dismiss. Thus any Fourth Amendment claims by other persons must be dismissed.

The Court finds that as to the 5 plaintiffs who have set forth a viable Fourth Amendment claim, those claims must be dismissed as to the State Police defendants Chandler, Ferrand, Way, Ferago, More, Kimball, and Grant. These defendants have submitted affidavits that indicate that they never had personal contact with any of the 27 newly named plaintiffs in connection with this case. Plaintiffs have set forth no facts to the contrary. Similarly, as to defendant Oneonta Police officers Redmond and Olsen the Fourth Amendment claims must fail. Summary judgment must be granted in their favor because they have stated in affidavits that they were not on duty and did not take part in the conduct pertaining to any cause of action in this case.

■ In the case of Darnell Lemons' encounter with the police, according to the allegations in the second amended complaint, although the police officers stopped Mr. Lemons as he was walking away from them, the officers only asked him questions, and he complied. Therefore, it is not possible to find this situation was a seizure. Accordingly, summary judgment is proper.

■ In the case of Ronald Jennings, while a passenger in a car, he was asked to get out of the car by two state police officers. Mr. Jennings was then "frisked." Mr. Jen-

---

**1.** Ricky Brown, Jamel Champen, Sheryl Champen, Hopeton Gordon, Jean Cantave, and Raishawn Morris were parties to the prior motion and are bound by the law of the case, as decided previously by the Court.

nings was not given an explanation until after being searched by the officer. As stated in *Terry v. State of Ohio,* a search in the absence of probable cause for an arrest must "be strictly circumscribed by the exigencies which justify its initiation." 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). The remaining State Police defendants have set forth no facts showing that the search was objectively reasonable such that the invasion of an individuals privacy was justified. *See, Terry,* 392 U.S. at 18–19, 88 S.Ct. at 1878–79. In accordance with the standards set forth in *Terry* and *Mendenhall,* the Court finds that there is a material question of fact as to whether the search was objectively reasonable, and as to whether a reasonable person would have believed that he was not free to leave. Given these circumstances, the court denies State Police defendants Wilson, Jackson, Hunt, and Clum's motion as to the Fourth Amendment claim of Ronald Jennings.

In the case of Felix Francis, a police officer asked him to show his bare arms boarding a bus. He complied with this request and was allowed to board the bus. The second amended complaint contains no allegations of a show of authority or physical force, and thus no seizure occurred. Thus, summary judgment should be granted.

Vincent Quinones has alleged that on a second encounter with the police relating to the police's efforts to check the hands and arms of young black males, he declined to show his arms and stated that he had already done so earlier. Mr. Quinones then alleges that the police threatened him with being brought to the police station if he did not comply with their request. The Court finds that a reasonable person could have believed that he was not free to leave or that compliance was compelled. *See, Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877. Thus, as to State Police defendants Wilson, Jackson, Hunt, and Clum, and the Oneonta defendants' motion to dismiss the Fourth Amendment claim of Vincent Quinones, such motion is denied.

Finally, Laurence Plaskett alleges that while attempting to board a bus at the Oneonta bus station, a uniformed State Police Trooper stopped him and said that Mr. Laurence could not get on the bus until he showed the officer his hands. Mr. Laurence alleges that he refused and tried to pass, but that the officer blocked the doorway with his arm until Mr. Laurence complied. These circumstances clearly raise a material factual issue as to whether a reasonable person would have believed that he was not free to leave. Certainly, after having refused to comply with an officer's request, having tried to pass, and having been prevented by the person of the officer, it cannot be said as a matter of law that no reasonable person would have felt detained. Thus, the Court denies the motion to dismiss the Fourth Amendment claim of Mr. Laurence pursuant to either Rule 12(b)(6) or 56 as to the State Police defendants Wilson, Jackson, Hunt, and Clum.

The allegations in the second amended complaint set forth incidents involving alleged wrongful conduct by certain law enforcement officials against 27 separate individual plaintiffs. Although most of these encounters with law enforcement officials appear to have been unpleasant, and the individuals subjectively did not feel free to leave, they do not meet the legal standard for seizure under the *Mendenhall* test. Thus, summary judgment in favor of the individual SUCO Public Safety Officers, Oneonta Police Officers, and State Police Officers should be granted on the Fourth Amendment claims under § 1983 as to each plaintiff, with the exception of plaintiffs Ronald Jennings, Vincent Quinones, and Laurence Plaskett, to the extent set forth herein.

**D. Equal Protection Claims**

All of the defendants argue that plaintiffs have failed, despite repleading, to state a viable claim for violations of the equal protection clause, as applied to the states through the fourteenth amendment. The crux of the defendants' arguments is that the plaintiffs have failed to allege any facts tending to show that similarly situated non-minority individuals were treated in a different manner than the plaintiffs in this case. Plaintiffs claim that the investigatory stops

588

made by law enforcement officers were made solely on the basis of race and thus violated the fourteenth amendment.

 Although race can be considered as a relevant factor in making an investigatory stop, law enforcement officials may not use race alone as a basis for such a stop. *United States v. Brignoni–Ponce,* 422 U.S. 873, 886–87, 95 S.Ct. 2574, 2582–83, 45 L.Ed.2d 607 (1975); *United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983). However, alleging that a stop was race-based is not enough to make out an equal protection claim, since "[t]o establish an equal protection claim, it is not enough to show 'bad motive' on the part of the [defendant]." *Sector Enterprises, Inc. v. DiPalermo,* 779 F.Supp. 236, 247 (N.D.N.Y. 1991). In order to assert a valid claim of equal protection rights, the plaintiffs must show the existence of a similarly situated non-minority group who has been treated differently. *Samaad v. City of Dallas,* 940 F.2d 925, 941 (5th Cir.1991); *Sector Enterprises* at 247. Moreover, the plaintiffs must show that *these* defendants have treated them differently than other similarly situated non-minority people. *Sector Enterprises* at 247. The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985) (citing, *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)).

In this case, the Court must determine whether the plaintiffs have made allegations in the second amended complaint that, when viewed in the light most favorable to the plaintiffs, and drawing all inferences in favor of the plaintiffs, sets forth a claim sufficient to withstand a dismissal motion under Rule 12(b)(6). *See, LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). The plaintiffs make the broad allegation that "all persons in New York, regardless of race, are similarly situated with respect to the law governing searches and seizures under the Fourth Amendment," and that "[o]n information and belief, defendants ... have not, during the

investigation of a crime in which the suspect was described as a white male, attempted to seek out ... every white male in and around Oneonta, New York." (Second Amended Complaint pars. 235–236). This does not meet the standard required for showing that the plaintiffs were impermissibly treated differently than other similarly situated persons. *See Samaad* at 941 (stating that the claim that grand prix races would not have been allowed adjacent to predominantly white neighborhoods was not a sufficient showing of disparate treatment of similarly situated persons); *see also Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 61 (2d Cir.1985) (noting that in order to present a valid equal protection claim for discriminatory treatment by officials in handling an application to the zoning board, the plaintiffs must allege that the defendants actually treated their application differently than other similar applications).

Plaintiffs have made no showing that similarly situated non-minorities, in fact, were treated differently than plaintiffs by these defendants. In this case, a valid equal protection claim would have to allege more than that all persons have the right to be treated equally under the Fourth Amendment, that all New York residents, regardless of race are similarly situated, or that any white male suspected of a crime is similarly situated. Plaintiffs would have to allege that a similarly situated group of non-minority individuals was treated differently by law enforcement officers in some other respect. Thus, the issue turns on what it means to be "similarly situated."

The delineation between similar and dissimilar must not be made so broad so as to enable a plaintiff to plead an equal protection claim in any situation in which police treat people suspected of different crimes differently. *See, U.S. v. Brignoni–Ponce,* 422 U.S. at 886–87, 95 S.Ct. at 2582–83 (1975) (noting that multiple factors may be considered by law enforcement officers when deciding whether to stop and search, such that not all stops violate the Fourth Amendment); *see generally, Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988) (42 U.S.C. § 1981 case). It is safe to say that some crimes, such as

violent or unusual crimes, prompt a more vigorous response from law enforcement personnel.[2]

In this case, an elderly woman was violently assaulted while sleeping at a friend's home. The alleged perpetrator of the crime was reported to be a young black male who had sustained a cut on his hand or arm. To defeat a motion to dismiss under 12(b)(6), the plaintiffs need not allege that a young white male suspected of the same sort of crime, and under the exact facts, was treated differently by law enforcement officials. *See generally, City of Cleburne,* 473 U.S. at 442, 105 S.Ct. at 3255. However, plaintiffs must allege more than that a white male suspected of *any* crime was not sought in the same manner as in the instant case. The crime committed in this case was violent. Plaintiffs have made no allegation and presented no evidence that a white male suspected of a *violent* crime was treated differently from plaintiffs. Thus, plaintiffs have not shown that a similarly situated class of non-minority individuals exists, much less that they were treated more favorably than plaintiffs.

Even assuming that plaintiffs had properly pleaded a claim under the equal protection clause, the Court would have dismissed the claim as against the Oneonta police defendants. The Oneonta police defendants cooperated with plaintiffs' discovery requests. In discovery plaintiffs sought records of all crimes in which a "white male" or "young white male" was described by the Oneonta police as the suspect. A list of 875 crimes fitting that description was generated by the Oneonta police defendants, yet none involved a violent crime.[3] Thus, the plaintiffs have failed to show that they were treated differently than similarly situated non-minorities, and failed to show that a group of similarly situated non-minorities even exist—at least with respect to the Oneonta law enforcement defendants. *See, Gehl Group v. Koby,* 63 F.3d 1528 (10th Cir.Colo.) (alleging that no other solicitation group had been prosecuted failed to show different treatment of similarly

situated group, and equal protection claim failed); *see also, Klinger v. Dept. of Corrections,* 31 F.3d 727, 731–32 (8th Cir.1994) (granting defendants' motion for summary judgment where size, length of stay, and level of security demonstrated that inmates in two prison facilities were not similarly situated). The Court finds that there is no evidence that raises a material factual issue as to whether the Oneonta police defendants had in fact treated whites differently from the plaintiffs. Thus, even if properly pleaded, plaintiffs would not have survived summary judgment as against the Oneonta police defendants.

As to the State Police defendants, the Court can point to no facts in the record to show that they did or did not treat non-minority individuals more favorably than the plaintiffs. Since the State Police defendants did not provide plaintiffs with any discovery, the Court cannot say that no material factual issue could be raised should plaintiffs replead a claim alleging an equal protection violation that could withstand a 12(b)(6) motion. Therefore, the Court dismisses plaintiffs second amended complaint as to the equal protection claim, without prejudice, and with leave to replead, only as against the State Police defendants.

## E. 42 U.S.C. § 1981 Claim

▮ Under 42 U.S.C. § 1981, an individual is provided with substantive rights and remedies rather than just a vehicle to assert violations of other statutory or constitutional rights. *Napoleon v. Xerox Corp.,* 656 F.Supp. 1120, 1123 (D.Conn.1987) (42 U.S.C. § 1981 provides substantive rights unlike 42 U.S.C. §§ 1983, 1985). Thus, the requirements for stating a valid cause of action under 42 U.S.C. § 1981 are different from those of other laws.

▮ To properly plead a claim under 42 U.S.C. § 1981, the plaintiffs must allege facts which establish that defendants' actions

---

**2.** One need only turn on the national television news to hear an account of the latest extraordinary efforts of law enforcement agencies attempting to apprehend or convict a person(s) suspected of violent crimes.

**3.** The overwhelming majority of the crimes were drug offenses and petit larceny.

were racially motivated and purposefully discriminatory. *General Building Contractors Asso. v. Pennsylvania,* 458 U.S. 375, 386, 102 S.Ct. 3141, 3148, 73 L.Ed.2d 835 (1982). "Under § 1981, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint to withstand dismissal under Rule 12(b)(6)." *Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (S.D.N.Y.1993), *aff'd in part and rev'd in part,* 35 F.3d 709 (2d Cir.N.Y.1994). If plaintiffs claim selective enforcement under 42 U.S.C. § 1981, then the complaint must contain specific instances where plaintiffs "were 'singled . . . out for unlawful oppression' in contrast to others *similarly situated." Albert v. Carovano,* 851 F.2d 561, 573 (2d Cir. 1988) (citing, *Birnbaum v. Trussell,* 347 F.2d 86, 90 (2d Cir.1965) (citations omitted) (emphasis added in original)). Thus, as has been previously stated herein, since plaintiffs have not alleged a similarly situated non-minority group in the second amended complaint, and since there may conceivably be a material question of fact as to the State Police defendants, assuming such evidence is produced in discovery, the Court dismisses plaintiffs' claims brought under 42 U.S.C. § 1981, with leave to replead as against the State Police defendants only.

 Notwithstanding the foregoing analysis, and since the Court is now considering these claims for the third time, the Court will address the issue of whether plaintiffs have pleaded sufficient facts to withstand a motion to dismiss, and if so, raised a material factual issue as to the second required element of a 42 U.S.C. § 1981 claim, racial animus.

Defendants correctly point out that race is a factor that police may consider when pursuing criminal investigations. *See, Buffkins v. Omaha,* 922 F.2d 465, 468 (8th Cir.1990). Defendants then argue that there was no purposeful discrimination on the part of any

law enforcement defendants because race was only one factor, along with age and gender,[4] on which such defendants relied when determining whom to question. Plaintiffs counter by arguing that they have sufficiently alleged purposeful discrimination. The Court notes, at this juncture, that plaintiffs must allege more than mere conclusory allegations and naked assertions to withstand a motion under Rule 12(b)(6). *See, e.g., Brown v. Oneonta (Brown II),* 858 F.Supp. 340, 344 (N.D.N.Y.1994) (citations omitted). Plaintiffs point to the number of individuals questioned who allege that such questioning was motivated solely by race, to the fact that a black female was questioned by the police, and that there were no factors other than race to justify the stops. Plaintiffs claims that such a showing raises a material factual issue.

The Court finds that there are material questions of fact as to the alleged racial animus of the defendants in this case. The law enforcement defendants claim that age and gender were additional factors that motivated the police to stop plaintiffs, yet there are no facts presented by either side to show the age of each plaintiff.[5] In addition, it is clear that at least one female was stopped in relation to the search for a "young black male," identified herself as a female to the officer, yet was asked to show identification to the officer before being allowed to get on a bus. It is reasonable to conclude that, at least as to that stop, gender was not an additional factor to consider when deciding whether to question an individual. The aforementioned incident, the fact that there is no evidence that non-blacks were questioned, the fact that blacks were questioned both on and off the SUCO campus,[6] and the fact that the stops and questioning is alleged to have continued for a period of days after the incident, raise a material question of fact as to whether the defendants acted with discriminatory intent.

---

4. Defendants seem to argue that the existence of a cut on the arm or hand was another factor, but it is undisputed that the law enforcement defendants did not stop and/or question only young black males with cuts on their arms or hands.

5. Not all plaintiffs were college students, and not all college students are young.

6. The suspect was traced by a canine unit to the property line of the SUNY Oneonta (SUCO) campus.

## G. City Of Oneonta Liability Under 42 U.S.C. § 1983

A municipality may not be held liable solely on the basis of a constitutional violation committed by an individual whom it employs. *See, Monell v. Dept. of Social Servs.*, 436 U.S. 658, 695, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Rather, "it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 695, 98 S.Ct. at 2037–38. Such discriminatory policies and customs may be established if they are "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.*, 436 U.S. at 692, 98 S.Ct. at 2036. Municipal liability may also be established by a single discriminatory act, particularly "where action is directed by those who establish governmental policy." *Pembaur v. Cincinnati*, 475 U.S. 469, 482, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). However, the Supreme Court explained that municipal liability under 42 U.S.C. § 1983 "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 484–85, 106 S.Ct. at 1300.

The plaintiffs argue that they have established municipal liability pursuant to the dictates of *Monell*. First, the plaintiffs argue that the multiple investigatory stops or questionings constitute evidence of an unwritten policy of conduct that violated the plaintiffs' constitutional rights. *See Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Second, the plaintiffs argue that the aforementioned incidents raise a question of fact as to an alleged "failure to train" theory of municipal liability. *See Kibbe v. Springfield*, 777 F.2d 801 (1st Cir.1986).

The defendants argue that there is no formal policy sanctioning improper searches. In addition, the defendants argue that Chief Donadio of the Oneonta Police department was not involved with the execution or supervision of the investigatory stops, and thus, cannot be said to be a "policymaker" for the purposes of *Monell* liability. Finally, the defendants argue that the failure to train argument is without merit, because there is no history of equal protection or Fourth Amendment violations of which the city was aware and deliberately ignored. *See Walker v. New York*, 974 F.2d 293 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

Under *Pembaur*, a municipality may be held liable if a "decision to adopt [a] particular course of action is properly made by that government's *authorized decisionmakers* ..." 475 U.S. at 481, 106 S.Ct. at 1299. In this case, Chief Donadio was not an authorized decisionmaker. Moreover, he had no involvement with the conduct complained of herein. The court does not mean to say that he could not have been the decisionmaker, but that given the record before the court there is no evidence to raise a question of fact as to whether he was a policymaker such that the city of Oneonta could be held liable on that basis.

Under *Walker*, a municipality may be held liable under 42 U.S.C. § 1983 for a failure to train officers. 974 F.2d at 297. Such failure to train amounts to an act of "deliberate indifference" to the rights of those who will be affected by the officers' conduct. *Id.* However, as *Walker* instructs, there are three requirements that the plaintiffs must show to establish deliberate indifference. First, the policymaker must know "'to a moral certainty' that her employees will confront a given situation." *Id.*, (citing, *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "Second, the plaintiff must show that the situation *either* presents the employee with a difficult choice of the sort that training or supervision will make less difficult *or* that there is a history of employees mishandling the situation." *Id.*, (emphasis added). Third, "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298.

As to the first element, it cannot seriously be contended, and has not, that a policymaker for the city of Oneonta did not know with a high degree of certainty that police officers would conduct investigatory stops.

As to the second element, the defendant Oneonta submits to the court that there is no showing of a history of equal protection or Fourth Amendment violations that the city was aware of yet failed to address. However, the defendant Oneonta does not address the alternative prong of the second requirement: whether the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult. As to this prong, the court finds that a material question of fact is raised.

The court cannot say as a matter of law that training or supervision as to the difficult Fourth Amendment situations raised by the investigation following this odious crime would not have prevented the conduct complained of herein. The defendant Oneonta has not shown that the officers were trained or supervised in this area of constitutional protection, nor has it argued, much less made a showing, that training would not have made any difference. Accordingly, the court must deny the city of Oneonta's motion for summary judgment as to municipal liability under 42 U.S.C. § 1983. The court need not address the third requirement set forth in *Walker.*

### I. Conspiracy to Violate FERPA in Violation of § 1983

■ The plaintiffs' ninth cause of action charges that defendants Hartmark, Wilson, Hunt, Chandler and Shedlock, who are all state defendants conspired to violate FERPA through their alleged participation in requesting, approving, compiling, releasing, and using the list of black male SUCO students. Defendants claim that the allegations of conspiracy are too vague and conclusory to create a valid cause of action.

■ A complaint comprised only of conclusory and vague conspiracy allegations to deprive a person of rights may be dismissed under Fed.R.Civ.P. 12(b)(6). *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.

1983), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158. To support a conspiracy charge, the plaintiffs must show that the defendants "acted in a willful manner, culminating in an agreement, understanding, or 'meeting of the minds,' which violated the plaintiffs' rights." *Katz v. Morgenthau,* 709 F.Supp. 1219, 1231 (S.D.N.Y.1989), *aff'd in part and rev'd in part,* 892 F.2d 20 (2d Cir.1989). On the other hand, it is recognized that conspiracies are rarely proven by direct evidence, and so "factual allegations of overt acts which give rise to a *reasonable* inference of the formation and furtherance of a conspiracy will suffice." *Long Island Lighting Co. v. Cuomo,* 666 F.Supp. 370, 425–26 (N.D.N.Y.1987). Nonetheless, the plaintiffs must still show through the supporting facts that there was a meeting of the minds, not just that the defendants "acted in concert with a common goal." *Cuomo* at 426.

In this case, the plaintiffs have adequately presented facts to support their conspiracy allegations. The plaintiffs detail the overt acts of communication among the defendants which could reasonably lead to an inference of the formation or furtherance of a conspiracy. The defendants seek dismissal based on the fact that the plaintiffs have put forth no evidence of a specific agreement. However, under the standard elaborated in *Cuomo* that is not necessary for a valid conspiracy pleading. Thus, the defendants motion for dismissal of the claims of conspiracy to violate FERPA under § 1983 is denied.

### J. Plaintiffs' Claim Under 42 U.S.C. § 1985(3)

■ "To prevail on a § 1985(3) claim, a plaintiff must prove that defendants (1) engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States." *New York State NOW v. Terry,* 886 F.2d 1339, 1358 (2d Cir.1989). It is clear from the plaintiffs' second amended complaint that these four elements have been

pleaded in paragraphs 317 to 324 in the fourteenth cause of action. Defendants allege that this 42 U.S.C. § 1985(3) claim has not been properly pleaded because the plaintiffs have not sufficiently alleged that a conspiracy occurred. However, as stated previously, "conspiracies are seldom proven with direct evidence, and thus factual allegations of overt acts which give rise to a *reasonable* inference of the formation and furtherance of a conspiracy will suffice." *Long Island Lighting Co. v. Cuomo,* 666 F.Supp. 370, 426 (N.D.N.Y.1987). Thus, as previously decided the defendant Hartmark's motion to dismiss this cause of action for failure to state a claim must be denied because the plaintiffs sufficiently elaborate the factual grounds on which they base their conspiracy claims in regard to the creation, approval, and release of the list.

■■■ However, the 42 U.S.C. § 1985(3) claim must be denied insofar as it relies on violations of the 4th and 14th Amendments. It is clear that 42 U.S.C. § 1985(3) does not provide substantive rights and remedies, but rather is simply a vehicle by which to bring causes of action for violations of other federal statutes and the constitution. *Napoleon v. Xerox Corp.,* 656 F.Supp. 1120, 1123 (D.Conn.1987). Thus, if the underlying violations of federal law are found to be invalid, the 42 U.S.C. § 1985(3) claim must fail as well. In this case the 4th and 14th Amendment claims are dismissed for failure to state a valid cause of action, and thus no 42 U.S.C. § 1985(3) claim for conspiracy to violate these provisions of the Constitution may be upheld. Thus, the 42 U.S.C. § 1985(3) claim is dismissed insofar as it pertains to violations of the Fourth and Fourteenth amendments, with prejudice as to the Oneonta defendants and without prejudice as to the state defendants.

### J. 42 U.S.C. § 1986 Claim

The sole reason for the existence of 42 U.S.C. § 1986 is to provide a remedy for the violation of 42 U.S.C. § 1985. *Levy v. New York,* 726 F.Supp. 1446, 1455 (S.D.N.Y.1989). Thus, stating a valid cause of action under § 1985 creates a valid cause of action under § 1986. *Levy* at 1455. Therefore, to the

extent that the court has granted and denied the defendants motions to dismiss the 42 U.S.C. § 1985 claims, it so rules as to the 42 U.S.C. § 1986 claims.

### K. Pendent State Claims

This court may exercise jurisdiction over state law claims if, in its discretion, it decides to exercise supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(a), the exercise of supplemental jurisdiction is appropriate "in any civil action of which the district courts have original jurisdiction," and wherein the state claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (1990 & Supp.). The same facts and circumstances giving rise to the claims on which the jurisdiction of this court is based, also form the basis for the state claims. Accordingly, in the interest of judicial economy and pursuant to 28 U.S.C. § 1367, the court will exercise supplemental jurisdiction over the state law claims.

### L. Discovery Issues

The discovery issues raised in these motions are referred to the magistrate judge for a determination not inconsistent with this decision.

### III. CONCLUSION

For the foregoing reasons, the court (1) GRANTS defendants Chandler, Ferrand, Way, Ferago, More, Kimball, Grant, Redman, and Olsen's motions to dismiss the 27 additional plaintiffs' Fourth Amendment claims, and GRANTS all the remaining defendants' motions for summary judgment as to the Fourth Amendment claims against all the plaintiffs' except, plaintiffs Ronald Jennings, Vincent Quinones, and Laurence Plaskett; (2) GRANTS the Oneonta defendants' motion to dismiss the plaintiffs' equal protection, 42 U.S.C. § 1981, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 claims with prejudice, and GRANTS the State Police defendants' motion to dismiss the plaintiffs' equal protection, 42 U.S.C. § 1981, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 claims without prejudice; (3) DENIES the city of Oneonta's motion for summary judgment as to munici-

pal liability pursuant to *Monell;* (4) DENIES the defendants' motion to dismiss the plaintiffs' claim of a conspiracy to violate FERPA under 42 U.S.C. § 1983, and (5) GRANTS the defendants' motion for the court to exercise supplemental jurisdiction over any remaining state law based claims.

**IT IS SO ORDERED.**