**Virgil OLIVER, Plaintiff,**

v.

**Robert CUTTLER, Defendant.**

**No. CV–96–2397 (ADS).**

United States District Court,
E.D. New York.

May 24, 1997.

---

Gordon, Goldberg & Juengst, P.C., New York City, for Plaintiff; Lawrence A. Goldberg, of counsel.

Dennis C. Vacco, Attorney General of State of N.Y., by Robert K. Drinan, Assistant

Attorney General, Mineola, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This action arises from the claims of the plaintiff, Virgil Oliver (the "plaintiff"), an African–American male, against the defendant, New York State Parole Officer Robert Cuttler (the "defendant"), for the violation of his constitutional and common law rights as the result of his arrest for a violation of New York Vehicle and Traffic Law § 1212. The defendant now moves for an Order dismissing the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative, for an Order granting summary judgment in his favor pursuant to Fed.R.Civ.P. 56.

## I. BACKGROUND

The following facts are set forth in the plaintiff's complaint. Virgil Oliver is a resident of Atlanta, Georgia. At approximately 11:00 A.M. on May 24, 1995, while driving his car with two passengers, the plaintiff entered the Southern State Parkway eastbound at Exit 36. After merging with the traffic, he changed from the right lane into the center lane. The plaintiff claims that almost immediately after entering the center lane, the defendant, while on his motorcycle, began tailgating the plaintiff's car. The plaintiff then switched back into the right lane, only to be followed by the defendant. The plaintiff attempted to return to the center lane but was unable to do so.

The plaintiff, with the defendant still tailgating him, exited the Southern State Parkway and proceeded northbound on the Sagtikos State Parkway. The plaintiff exited the Sagtikos States Parkway at exit § 3 and proceeded to the intersection of the exit ramp and Pine Aire Drive in West Brentwood. When the two vehicles were stopped at a red traffic light, the plaintiff claims that the defendant "got off from his motorcycle and, without identifying himself, approached ... [his] vehicle, brandished a handgun, pointed it at ... [him] and demanded that ... [he] step out from his vehicle." When the defendant exited his vehicle, the defendant pointed his gun at the plaintiff's head. The defendant proceeded to kick the plaintiff in his legs, thus precipitating the plaintiff to the ground, and then handcuffed the plaintiff. The defendant allegedly held the plaintiff for over 30 minutes. While the plaintiff was being held by the defendant, a passerby allegedly asked the plaintiff whether she should call the police. The plaintiff responded in the affirmative. The plaintiff alleges that upon hearing this conversation, the defendant threatened the passerby with physical harm. The Suffolk County Police Department officers arrived a short time later and placed the plaintiff under arrest for reckless driving.

Based on these events, the plaintiff filed his complaint on May 14, 1996 alleging causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983"): (1) for the use of excessive force while making an arrest, in violation of the Fourth Amendment; (2) that the plaintiff's arrest was the result of racial animus, in violation of the Fourteenth Amendment; (3) that the plaintiff's arrest violated his First Amendment right of free association; (4) that the arrest violated his procedural due process in contravention of the Fourteenth Amendment; and (5) that he was unreasonably seized in violation of the Fourth Amendment. In addition, pursuant to the Court's diversity jurisdiction, the plaintiff alleges four related state law causes of action for: (1) false imprisonment; (2) assault and battery; (3) negligence; and (4) intentional infliction of emotional distress. In a Stipulation dated September 4, 1996, the plaintiff discontinued his Section 1983 claims arising from a violation of his procedural due process and from an unreasonable seizure.

As stated above, the defendant moves for an Order dismissing the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative, for an Order granting summary judgment in his favor pursuant to Fed.R.Civ.P. 56.

Based on sufficient notice to all the parties, the Court elects to treat this motion as one for summary judgment. Oral argument on this matter was heard on March 19, 1997.

## II. DISCUSSION

### A. Summary judgement standard

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (setting forth summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *W.A. Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United Nat'l Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, the non-movant must come forward with specific facts showing that a genuine issue exists to avoid the motion being granted. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed. R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City,* 72 F.3d 1040, 1049 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue-finding", not "issue-resolution." *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### B. Section 1983 claims

42 U.S.C. § 1983 provides in relevant part:

> ·Every person who, under color of [state law] subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit on equity.

The Supreme Court has interpreted the "plain words" of this statute as imposing liability "only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and its laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

■ Whether the defendant was off-duty as plaintiff contends or on duty as maintained by the defendant, the defendant was acting "under color of state law." The defendant is a New York State Parol Officer and as such, is a "peace officer" under New York Law. *See* N.Y.Crim. Proc. Law § 2.10(25) (McKinney 1981). He is authorized to make an arrest within his geographic area for an offense committed in his presence. He was carrying handcuffs, and a gun issued by the state. The circumstances leading to the plaintiff's arrest was unquestionably an action under color of state law. *See Rivera v. La Porte,* 896 F.2d 691, 695–96 (2d Cir.1990) (correction officer acted under color of state law in making an arrest arising from a traffic dispute).

Having established the first element of a Section 1983 claim, the Court will examine each of the plaintiff's claims for violation of his civil rights.

### 1. *Excessive force*

█ The plaintiff seeks recovery on the grounds that the defendant used excessive force in the prior to his arrest, in violation of the Fourth Amendment. Determining whether the force used is "reasonable" under the Fourth Amendment requires objective inquiry as to whether the defendant's actions are "objectively reasonable" given the totality of the circumstances, regardless of the defendant's underlying intent or motive. *Ricketts v. City of Hartford*, 74 F.3d 1397, 1411 (2d Cir.1996). "The 'reasonableness' of a particular use of force must be judged from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Factors to consider include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Thus, the test is whether "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir.1995).

█ The plaintiff claims that the defendant, in the absence of any provocation or wrongdoing by the plaintiff, pointed a gun to his head, kicked him in his legs, causing him to fall. In the Court's view, these allegations if taken as true, establish a claim for excessive force.

### 2. *Racial animus*

The plaintiff maintains that the defendant's actions were motivated by racial animus, in violation of the Equal Protection Clause of the Fourteenth Amendment. To establish a violation of the Equal Protection Clause, it is not enough to demonstrate the defendant's bad motive. *Brown v. City of Oneonta*, 911 F.Supp. 580, 588 (N.D.N.Y. 1996). The plaintiff must show the existence of a similarly situated non-minority group who has been treated differently. *Id.* In addition, the plaintiff must demonstrate that the defendant has treated him differently than other similarly situated minority people.

*Id.* The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313).

█ The plaintiff alleges that "[t]he action undertaken by defendant, as described above, were effected because of defendant's animus towards plaintiff's race." In his affidavit, the plaintiff states that the defendant called him "several names, including racial slurs." The use of racial slurs, alone, fail to state a claim for violation of the equal protection clause of the Fourteenth Amendment. *See Haussman v. Fergus*, 894 F.Supp. 142, 149 (S.D.N.Y.1995). However, the plaintiff claims that the alleged use of racial slurs, in conjunction with the alleged acts of violence, establish a claim for violation of the equal protection clause. The Court finds that the plaintiff has made no showing that similarly situated non-minorities were treated differently than plaintiff by the defendant, nor is this alleged in the complaint. Specifically, the plaintiff has not shown nor alleged that the defendant would not have struck similarly situated non-minorities during the course of a traffic stop. The plaintiff has not shown that the defendant's alleged act of violence stems from racial animus. Since racial slurs, alone, fail to state a violation of the equal protection clause, the plaintiff's failure to prove or allege that similarly situated non-minorities would have been treated differently during the course of a traffic stop, is fatal to the plaintiff's claim for violation of the equal protection clause. Therefore, the defendant's motion for summary judgement dismissing the plaintiff's claim for deprivation of the equal protection of the laws is granted.

### 3. *Free association*

The plaintiff contends that the defendant violated his right of free association, as provided by the First Amendment. This violation occurred when the defendant "acting under color of state law, targets a person for violent behavior because he is associating with members of a class of persons against

whom the actor has an unlawful animus. . . ." Plaintiff's Memorandum of Law at 17.

The U.S. Constitution affords protection to two distinct types of association: "intimate association" and "expressive association." *City of Dallas v. Stanglin,* 490 U.S. 19, 23–25, 109 S.Ct. 1591, 1594–95, 104 L.Ed.2d 18 (1989). The freedom of intimate association is defined as those relationships that may be classified as familial in nature, as involving "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Roberts v. United States Jaycees,* 468 U.S. 609, 620, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984). Examples of such relationships include the creation and sustenance of a family, *id.,* marriage, *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), the begetting and bearing of children, *Carey v. Population Services Int'l,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), cohabitation with relatives, *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), and child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

■ "Expressive association" protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly and the exercise of religion. It is otherwise known as "political" associational rights. *Sanitation and Recycling Industry, Inc. v. City of New York,* 107 F.3d 985, 996 (2d Cir.1997). In *Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989), the Supreme Court stated, "It is possible to find some kernel of expression in almost every activity a person undertakes— for example . . . meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." The Supreme Court expressly rejected a right of association of persons solely for recreational pursuits.

■ The plaintiff's complaint does not set forth any allegations that he and the two passengers travelling with the plaintiff, Krishna Collie and Howard Buford, were involved in an activity other than in a social capacity. Nor is this alleged in the affidavits of the plaintiff or the two passengers submitted in opposition to the defendant's motion for summary judgment. Therefore, the defendant's motion for summary judgment dismissing the plaintiff's claim for violation of the plaintiff's right to free association guaranteed by the First Amendment is granted.

C. *State law claims*

In addition to the constitutional claims reviewed above, the plaintiff has alleged state law claims for: (1) false imprisonment; (2) assault and battery; (3) negligence; and (4) intentional infliction of emotional distress. The defendant asserts that these state law claims, based upon diversity jurisdiction, cannot be pursued in federal court. The defendant maintains that such claims must have been brought in the New York State Court of Claims after the timely filing of a notice of claim. Because issues of fact exist as to whether the defendant was acting within the scope of his employment or in the discharge of his duties, the Court finds this argument unavailing.

N.Y. Exec. Law § 259–q ("Section 259–q") provides in pertinent part as follows:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the division, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of the duties of any officer or employee of the division shall be brought and maintained in the court of claims as a claim against the state.

The defendant asserts that a parole officer is defined by statute as a peace officer, *see* N.Y.Crim. Proc. Law § 2.10(23), with the power to make warrantless arrests and "the power to use physical force and deadly physi-

cal force in making an arrest ...", *id.* § 2.20(a), (b). The defendant claims that a peace officer who lawfully exercises any of the statutory duties "shall be deemed to be acting within the scope of his public employment for purposes of defense and indemnification rights and benefits." *Id.* § 2.20(3).

According to the defendant, N.Y.Crim. Proc. Law § 2.20 has significantly expanded protection to peace officers against the consequences of civil suits. See Practice Commentaries, N.Y.Crim. Proc. Law § 2.20 (McKinney 1993). The defendant states that according to the commentaries, "state and local government employers must extend otherwise available indemnification benefits to include cases where their peace officer employees utilize the statutory special powers provided by this section in situation unrelated their particular employment assignments." In addition, the defendant asserts that this protection applies to actions taken while the officer is off-duty.

The defendant notes that while the federal courts have not reviewed the scope of Section 259–q, the Second Circuit has analyzed N.Y. Correct. Law § 24, which is word for word, identical to Section 259–q, with the exception that it applies to correctional officers rather than parole officers. *See Baker v. Coughlin,* 77 F.3d 12 (2d Cir.1996). Therefore, the defendant claims that Section 259–q should be analyzed in a similar manner.

In *Baker, supra,* an inmate had been involved in an altercation with corrections officers and as a result, the inmate died of asphyxiation and strangulation. The Second Circuit held that " § 24(2) requires that state law claims for damages against corrections officers 'shall be brought ... [as] claim[s] against the state.' This provision, by its plain terms, precludes the assertion of claims against corrections officers in any court, including the federal courts." *Id.* at 15. Furthermore, the Second Circuit stated that:

> federal courts are bound to apply state substantive law to [a] state claim.... It is the source of the right, not the basis of federal jurisdiction, which determines the controlling law. [quoting *Van Gemert v. Boeing Co.,* 553 F.2d 812, 813 (2d Cir. 1977)] This includes any restrictions set

by the state in whether a plaintiff may bring a court action regarding the claim. If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court.

*Baker,* 77 F.3d at 15.

In making the preceding evaluation of Section 24, the Second Circuit declared that " § 24 governs the substantive rights of corrections officers by conferring upon them an immunity from liability for activities that fall within the scope of the statute." *Id.* at 15. However, the Baker court never examined the issue of whether the defendants' actions were *ultra vires.*

■ Here, the defendant claims that the plaintiff cannot escape the jurisdictional limitation of Section 259–q by alleging that the defendant's actions were outside the scope of his employment. The defendant further states that such a result would undermine the purpose of Section 259–q and discourage peace officers from performing their statutory duties. According to the defendant, as a matter of law, an arrest and use of force are lawful and within his duties as a peace officer. Therefore, the defendant is immune from the plaintiff's purported state law claims in federal court. Accordingly, the defendant maintains that the plaintiff's state law claims must be dismissed.

On the other hand, the plaintiff claims that the N.Y. Exec. Law § 259–f(1) defines "parole officers" as "employees in the division [of Parole] who perform the duties of supervising inmates released on parole or conditional release, and employees who perform professional duties in institutions and who are assigned to provide institutional parole services pursuant to section two hundred fifty-nine-e of this article...." The plaintiff asserts that he was never an inmate or on conditional release. In fact, the plaintiff claims that he was not engaged in the use of parole services and was never required to report to a parole officer. Rather,

the plaintiff contends that he was engaged in a private traffic dispute, arising from the defendant's private anger and/or animus at a perceived slight.

Significantly, the plaintiff claims that the act complained of was undertaken either beyond the scope of a parole officers' employment or outside of the discharge of that officer's duties and therefore the restriction promulgated by Section 259–q is inapplicable. The plaintiff submits an affidavit by Gloria Jean Rantin, a former New York State Parole Officer, in support of his contentions. Ms. Rantin states that it was and is her understanding that parole officers were not responsible for making routine traffic stops, even in the course of their duties, unless it involves a parolee. In addition, the plaintiff alleges that officers from the Suffolk County Police Department, not the defendant, arrested him. However, this latter allegation is undermined by the defendant's submission of an arrest report signed by the defendant.

Section 259–q(1) states that it precludes civil actions from being "brought in any court of the state, except by the attorney general on behalf of the state," against parole officers for "acts within the scope of the employment and in the discharge of the duties by such officer." The plaintiff comprehends the statute to mean that "if the act complained of was undertaken beyond the scope of a parole officer's employment or outside of the discharge of that officer's duties: a) persons other than the attorney general may maintain an action against a parole officer . . . and b) an action thereon need not be maintained as a claim against the state in the Court of Claims."

In *Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 303, 391 N.E.2d 1278, 1281 (1979), the New York Court of Appeals stated that "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependant on factual considerations, the question is ordinarily one for the jury."

However, that is not to say there are no useful guidelines for assessing whether the conduct of a particular employee falls within the permissible ambit of the employment. The Court of Appeals, in *Riviello v. Wal-*dron, *supra,* articulated the following five-factor test to determine whether an employee is acting within the scope of employment and in the course of his duties:

1) whether the act complained of was one that the employer could reasonably have anticipated of its employee;

2) the connection between the time, place, and occasion for the act;

3) the employer/employee relationship, as it has historically existed;

4) whether the act is one commonly undertaken by the employee; and

5) the extent of departure from the employer's normal methods of performance.

In the present case, upon application of the *Riviello* factors, this Court concludes that a reasonable jury could find that the actions of the defendant were beyond the scope of his employment and duties, as a traffic violation may not be deemed an event that would trigger a parole officer's invocation of peace officer status. Also, the State Division of Parole may not have reasonably anticipated that the defendant would pursue and detain a non-parolee driver for a traffic violation.

In addition, the Court is unaware of any information leading to the conclusion that the arrest occurred in the course of locating or pursuing a parolee, at the defendant's office, or that he was coming to the aid of a fellow peace officer. There is also no evidence establishing that the defendant made previous traffic violation arrests or stops, hence no establishment of an "actual practice" has been set forth. Therefore, a question of fact exists as to whether the defendant was acting within the scope of his employment during the relevant time period. Consequently, the defendant's motion for summary judgment to dismiss the plaintiff's state law claims pursuant to Section 259–q, is denied.

### 1. *False imprisonment*

Under New York law, claims for false imprisonment can be defeated if the defendant can establish the existence of probable cause for the arrest. *Cameron v. Fogarty,* 806 F.2d 380, 386–88 (2d Cir.1986),

*cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987) (addressing section 1983 claims and incorporating New York common law); *see Broughton v. State,* 37 N.Y.2d 451, 457–58, 373 N.Y.S.2d 87, 94–95, 335 N.E.2d 310, 314–315 (1975). The defendant claims that he had probable cause for arresting the plaintiff, namely, for reckless driving. In the plaintiff's affidavit submitted in opposition to the defendant's motion for summary judgment, the plaintiff claims that he was driving within the speed limit and that the defendant's actions were unwarranted. The plaintiff also submits affidavits from the two passengers which state that the plaintiff was not guilty of any wrongdoing. Therefore, the Court finds that a question of fact exists as to whether there was probable cause for the plaintiff's arrest. Therefore, the defendant's motion for summary judgment to dismiss the plaintiff's claim for false imprisonment is denied.

### 2. *Assault and battery*

■■■■■ Under New York law, to establish a claim for assault a party must show an intentional placing of another in fear of imminent and offensive contact. *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 108 (2d Cir.1993); *Rivera v. Puerto Rican Home Attendants Servs., Inc.,* 930 F.Supp. 124, 132 (S.D.N.Y.1996). In order to establish a claim for battery, a plaintiff must show an intentional wrongful physical contact with another without his or her consent. *United Nat'l Ins.,* 994 F.2d at 108; *Roe v. Barad,* 230 A.D.2d 839, 647 N.Y.S.2d 14, 15, (2d Dep't 1996).

■■■■Applying these standards, the Court finds that the plaintiff has established claims for assault and battery, against whom he also has a claim for excessive force. As set forth above, assuming his allegations that the defendant struck him in the legs, thereby causing him to fall to the ground, the Court finds that the plaintiff has shown sufficient evidence to maintain his state assault and battery claims. Accordingly, the defendant's motion for summary judgment with respect to the plaintiff's assault and battery claim is denied.

### 3. *Negligence*

■■■ The plaintiff also makes a claim for negligence. To establish a claim for negligence, the plaintiff must establish a duty, a breach of that duty, the alleged breach of duty proximately causing injury, with damages resulting. *Hassanein v. Avianca Airlines,* 872 F.Supp. 1183, 1186 (E.D.N.Y.1995); *Packer v. Skid Roe, Inc.,* 938 F.Supp. 193, 196 (S.D.N.Y.1996). However, New York has adopted the view that, "once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." *Mazzaferro v. Albany Motel Enterprises, Inc.,* 127 A.D.2d 374, 515 N.Y.S.2d 631, 632–33 (3d Dep't 1987); *accord Locke v. North Gateway Restaurant, Inc.,* 233 A.D.2d 578, 649 N.Y.S.2d 539, 540 (3d Dep't 1996). Accordingly, as set forth above, because the plaintiff's claims, to the extent they survive the defendant's summary judgment motion, sound in intentional torts such as assault and battery, his negligence claim is dismissed.

### 4. *Intentional infliction of emotional distress*

The plaintiff alleges that the defendant's actions constitute the tort of intentional infliction of emotional distress. The elements of a claim of intentional infliction of emotional distress under New York law are:

(1) extreme and outrageous conduct;

(2) intent to cause severe emotional distress;

(3) a causal connection between the conduct and the injury; and

(4) severe emotional distress.

*Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996). In order the satisfy the first element, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]." *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983).

■■■■ Plaintiff concedes that "where the act complained of constituted official conduct,

public policy prohibits the maintenance of a suit against the State for intentional infliction of emotional distress." *Brown v. State of New York,* 125 A.D.2d 750, 509 N.Y.S.2d 169 (3rd Dep't 1986). However, a question of fact exists as to whether the defendant's actions constitute an official conduct. The plaintiff contends that the defendant never identified himself as a peace officer and that he acted in his individual capacity when the defendant hurled racial epithets at him and struck him. Furthermore, the plaintiff contends that the defendant's actions were unprovoked. A reasonable jury may find that these allegations, if true, are "extreme" and "outrageous." Further, the Court finds that these allegations are sufficient to state a colorable claim for the intentional infliction of emotional distress. Therefore, the defendant's motion for summary judgment to dismiss the plaintiff's claim for the intentional infliction of emotional distress is denied.

## D. *Immunities*

The defendant asserts the Eleventh Amendment, absolute and qualified immunities as defenses to the plaintiff's claims.

### 1. *The Eleventh Amendment*

■ The Court finds that the plaintiff's claims against the defendant will withstand the defendant's Eleventh Amendment challenge. Under the Eleventh Amendment, state officials, such as the individual defendant, are also protected from private suits in federal court. However, this protection attaches only when suit is brought against a state official in his "official capacity." Suits brought against state officials in their "individual capacity" or "personal capacity" are not barred by the Eleventh Amendment.

The Supreme Court, in *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), speaking through Justice O'Conner, discussed the legal "capacity" dichotomy that arises for purposes of determining Section 1983 liability in suits brought against state officials. Suits brought against a state official in his official capacity " 'generally represent only another way of pleading an action against an entity of which an officer is an agent' " *Id.* at p. 25, 112 S.Ct. at p. 361

(citation omitted). Therefore, a suit brought against a state official in his official capacity should be treated as a suit against a state. *Id.* at p. 25, 112 S.Ct. at p. 361. Hence, such a suit is barred by the Eleventh Amendment.

■ On the other hand, personal capacity or individual capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.,* at p. 25, 112 S.Ct. at p. 362. In *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), the Supreme Court also stated that "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." (emphasis in original). Therefore, a state official cannot hide behind the Eleventh Amendment to protect himself from liability flowing from his acts which violate federal law. The *Hafer* Court recently reiterated this rule "since *Ex Parte Young,* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he deprived another of a federal right under color of state law." *Hafer, supra,* 502 U.S. at p. 30, 112 S.Ct. at p. 364 (quoting *Scheuer v. Rhodes,* 416 U.S. 232 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974)).

In *McGuire v. Switzer,* 734 F.Supp. 99 (S.D.N.Y.1990), the Southern District confronted a Section 1983 complaint that was brought against state officials in their individual and official capacities. The Court determined that the suit could be maintained, despite an Eleventh Amendment challenge, to the extent that the suit was brought against the defendants in their individual capacities, though the acts complained of arose in the course of their official capacities.

As an incidental point, the Court notes that a state's voluntary decision to indemnify an official does not transform a personal capacity suit into an official capacity suit. *See Farid v. Smith,* 850 F.2d 917, 923 (2d Cir. 1988).

In light of the these cases and the fact that the plaintiff seeks to sue the defendant in his individual capacity, it is clear that if proven

at trial, the plaintiff's allegations under Section 1983 are sufficient to establish personal liability on the defendant.

### 2. *Absolute immunity*

█ The Supreme Court has held that individuals performing certain functions have absolute immunity under Section 1983. Specifically, the Supreme Court has recognized absolute immunity for those performing judicial, legislative, and prosecutorial functions. *See Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judicial immunity); *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (legislative immunity); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutorial immunity). Absolute immunity is also afforded to police officers serving as witnesses and to the President of the United States. *See Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (police officers who commit perjury have absolute immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (presidential immunity). The defendant has not set forth any facts which would warrant invocation of the defense of absolute immunity.

### 3. *Qualified immunity*

█ Government actors who perform discretionary functions are protected from liability for civil damages where their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known. *Doe v. Marsh*, 105 F.3d 106, 109 (2d Cir.1997); *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996) (finding police officer protected by qualified immunity in case involving use of excessive force); *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995) (same). Even where the plaintiff's rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a governmental actor if it was "objectively reasonable" for the actor to believe that his actions were lawful at the time of the alleged unlawful conduct. *Marsh*, 105 F.3d at 109–110; *Lennon*, 66 F.3d at 420. In general,

police officers have qualified good faith immunity to suits against them pursuant to Section 1983. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

In *Lennon, supra*, a case addressing claims of false arrest, malicious prosecution and excessive force, the Second Circuit made two important observations. First, the availability of qualified immunity

does not turn on whether the defendants violated the plaintiff's rights; qualified immunity is a *defense:*

We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Lennon*, 66 F.3d at 423 (quoting *Anderson v. Creighton*, 483 U.S. 635, 642, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)). Second, the "objective reasonableness" standard does not require the existence of clearly established constitutional or statutory right, but an objectionably reasonable belief by the officer that his actions did not violate that right. *Lennon*, 66 F.3d at 423 (citing *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987)).

█ When assessing the qualified immunity defense with respect to a false arrest claim, *Lennon* teaches that an arresting officer is entitled to qualified immunity where it is either objectively reasonable for the officer to believe that there was probable cause for the arrest, or if officers of reasonable competence could disagree as to whether there was probable cause. *Id.* Applying this standard, the Court finds that a question of fact exists as to whether there was probable cause for the arrest. The plaintiff contends that no probable cause existed and that the defendant's actions were motivated by racial animus. On the contrary, the defendant maintains that the plaintiff was guilty of a traffic violation.

█ "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to

warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* at 424 (internal quotation omitted). Probable cause is presumed where the person arrested is ultimately convicted and the conviction is not subsequently invalidated. *Cameron v. Fogarty,* 806 F.2d 380, 386–88 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987) (addressing Section 1983 claims and New York common law); *See Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir. 1995) (addressing this issue in the context of a *Bivens* claim, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)).

In the present case, the plaintiff states in his affidavit that he was released on $25.00 bail and issued an appearance ticket after being detained for two hours. The charge of reckless driving was adjourned in contemplation of dismissal on October 25, 1995. The charge was dismissed on April 25, 1996. Therefore, no presumption of probable cause exists in the present action.

 The excessive force claim however, presents a different question. The fact that there was probable cause for an arrest does not preclude a claim for excessive force. *Ferreira v. Westchester County,* 917 F.Supp. 209, 218 (S.D.N.Y.1996). As the Second Circuit summarized in *Lennon,* 66 F.3d at 425:

> In *Graham v. Connor,* [490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)] the Supreme Court held that "*all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment 'reasonableness' standard." 490 U.S. at 395, 109 S.Ct. at 1871. Determining whether the force used during an arrest was "reasonable" requires balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (internal quotation marks and citations omitted). This standard evaluates the reasonableness of the force used by consider-

ing the totality of the circumstances faced by the officer on the scene. *Id.; Anderson v. Branen,* 17 F.3d 552, 560 (2d Cir.1994). The Supreme Court has stated explicitly: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers', violates the Fourth Amendment." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

*Lennon,* 66 F.3d at 425 (emphasis in original). The test is whether "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Id.* at 426.

According to the complaint:

> 17. When OLIVER got out from his vehicle, defendant CUTTLER pointed his weapon at OLIVER'S head and kicked OLIVER in his legs, thus precipitating OLIVER to the ground, at which point defendant produced manacles from his person, manacled OLIVER and held OLIVER for over 30 minutes.

Complaint at 17.

 In the Court's view, these allegations when taken as true, do establish a claim for excessive force. The plaintiff contends that no probable cause or provocation existed for the defendant's actions. Although the Court makes no finding as to the merits of such a claim, if an officer points a gun to the complainant's head, strikes the complainant thus causing him to fall, all without provocation, that officer would not be protected by the doctrine of qualified immunity.

### III. *CONCLUSION*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above; it is hereby

ORDERED, that the motion for summary judgment of Robert Cuttler to dismiss the plaintiff's claim for negligence, pursuant to Fed.R.Civ.P. 56 is granted; it is further

ORDERED, that the motion for summary judgment of Robert Cuttler to dismiss the plaintiff's claims under 42 U.S.C. § 1983 al-

96

leging violations of the First Amendment freedom of association and the Fourteenth Amendment equal protection of the laws pursuant to Fed.R.Civ.P. 56 is granted; it is further

**ORDERED,** that the motion of Robert Cuttler for summary judgement to dismiss the remainder of the plaintiff's causes of action pursuant to Fed.R.Civ.P. 56 is denied; and it is further

**ORDERED,** that the parties are directed to appear to select a jury for this action on May 27, 1997 at 9:00 A.M. in Courtroom A.

**SO ORDERED.**