Jean CHANDIE, Administratrix of the Estate of Dexter Chandie, Deceased, Plaintiff,

v.

John WHELAN and The City of Long Beach, Defendants.

No. 95 CV 2986(NG).

United States District Court, E.D. New York.

Sept. 3, 1998.

172

Grace P. Thompson, New York, NY, for the Plaintiff.

Allen E. Huggins, Asst. Corporation Counsel, City of Long Beach, Long Beach, NY, for the Defendants.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

This action is brought pursuant to 42 U.S.C. §§ 1983, 1986 and 1988. The plaintiff, Jean Chandie, alleges that her son, Dexter Chandie, was deprived of his civil rights by the unwarranted application of deadly force when he was fatally shot in June 1993 by defendant John Whelan, a police officer employed by defendant City of Long Beach. The defendants now move for summary judgment. The plaintiff opposes the motion and has also moved for leave to join additional parties as defendants and to raise new claims under 42 U.S.C. §§ 1981, 1985 and 1986.

### FACTS

The following recitation of facts is based upon the deposition testimony of defendant John Whelan and non-party witness Harold Michaels and upon exhibits submitted to the court by the defendants. The plaintiff has responded to the recitation of the facts contained in the defendants' moving papers by declaring that "most of these facts are not believed by plaintiff to be true." Pltf.'s Mem. at 2. However, instead of asserting what exactly she believes to be the true course of events, the plaintiff does two things: 1) directs the court's attention to inconsistencies in the factual record submitted to the court by the defendants and 2) speculates that the facts, even as set forth by the defendants, support the existence of a conspiracy to cover up the true facts surrounding the death of Dexter Chandie. As set forth below, the plaintiff's efforts are unavailing; the inconsistencies are immaterial and the speculation as to an alternate course of events is unsupported.

The plaintiff, Jean Chandie, is the mother of Dexter Chandie and the administratrix of his estate. At the time of the incident that gives rise to this action defendant John Whelan was a police officer for defendant City of Long Beach ("the City") and also held a part-time job as a security manager at the Foodtown supermarket in Oceanside, New York. Whelan was hired by the City in 1986 and

was hired for his part-time position at Foodtown in approximately 1991.

On the evening of June 7, 1993 Whelan was working at Foodtown with Harold Michaels, the Assistant Store Manager. As an off-duty police officer, Whelan was armed with a handgun, issued to him by the City, which he carried that evening in a shoulder holster concealed under his shirt. Whelan and Michael's final duty of the evening was to lock the store at closing time. Having done this, they proceeded to their respective automobiles, which were parked in the store's lot. Upon reaching his automobile, Michaels observed that one of its rear tires had been slashed. He summoned Whelan, and the two men proceeded to change the slashed tire.

While they were working on the tire, two men, later identified as Dexter Chandie and Collin Victor, approached Whelan and Michaels. Chandie and Victor drew handguns and ordered Whelan and Michaels to stand and walk back to the front door of the Foodtown store. Upon being ordered to do so, Michaels unlocked the front door. He and Whelan were then taken at gunpoint to the rear of the store, where the bookkeeping office was located. Michaels did not have a key for the locked door of the bookkeeping office, but he informed Chandie and Victor that he could open the door with a screwdriver. Michaels, accompanied by Dexter Chandie, went to obtain a screwdriver from the store's hardware department, while Victor ordered Whelan to lie flat on the floor of the hallway outside of the bookkeeping office. After returning with a screwdriver, Michaels opened the door to the bookkeeping office. Whelan was then ordered to lie flat on the floor of the bookkeeping office while Michaels assisted Victor with opening various safes inside the office.

Shortly thereafter, either Whelan or Michaels stated that the Foodtown store was cleaned each evening by two porters, who were locked into the store at closing time. Chandie left the bookkeeping room to find the two porters, while Victor began loading the contents of the safes into a bag, while keeping Whelan and Michaels at gunpoint. Chandie returned with the two porters, Andres Sorto and Immer Ortega, who were ordered to sit on the floor of the hallway outside of the bookkeeping office. Chandie then handed Whalen a roll of duct tape and ordered him to go into the hallway and bind the two porters. Whalen performed this task while Chandie stood in the doorway of the bookkeeping office, holding a gun pointed at him. Victor continued loading the contents of the safes while Michaels was made to lie on the floor of the office.

At some point during this sequence of events, Dexter Chandie asked Michaels if there was some place in the store where Michaels, Whelan, Sorto and Ortega could be locked up once he and Victor were prepared to leave the store. Michaels testified at his deposition that he replied that there was not, to which Chandie responded to the effect that that meant "trouble for you guys." Michaels Dep. at 99. Whelan also testified this exchange took place, and quotes Chandie's response as, "That is too bad, too bad guys, that is really too bad." Whelan Dep. at 151. Whelan also testified that, at some point while unloading the contents of the safes, Victor remarked, "I don't see one twenty, not one fucking twenty. I better see some big bills fast or something is going to happen." *Id.* at 104. At this, Whelan testified, Dexter Chandie remarked, "I am getting trigger happy here, I am really getting trigger happy." *Id.* Michaels, whose deposition took place after Whelan's, was not asked whether or not he recalled these comments.

As he was binding the porters with duct tape, Whelan noticed that Dexter Chandie had turned to look inside the bookkeeping office. At that instant, Whelan reached for the gun in the shoulder holster underneath his shirt, drew the gun at Chandie and said, "Police, don't move!" Whelan Dep. at 116. Chandie responded by moving toward Whelan and simultaneously drawing his gun. At this, Whelan fired a number of shots at Chandie, who was propelled backwards into the bookkeeping office by the impact of the bullets. Whelan himself then moved into the office and immediately encountered Victor, who was moving toward him with his gun raised. Whelan then fired a number of shots at Victor, who fell to the floor.

Whelan directed Michaels to telephone the Nassau County Police Department, within whose jurisdiction the Foodtown store was located, who arrived at the Foodtown store, along with ambulances, shortly thereafter. Dexter Chandie and Victor were both pronounced dead at the scene shortly after 12:30 a.m. on June 8, 1993. Jean Chandie identified the body of her son during the afternoon of that day. The autopsy performed on Dexter Chandie reported that he had been hit by three bullets, all of which penetrated his chest. The autopsy report concluded that Chandie had died as a result of "Gunshot Wounds of Chest with Perforation of Lungs and Aorta." Defts.' Ex. E at 10.

Shortly after the arrival of the Nassau County Police, Whelan was taken to a hospital emergency room to be treated for trauma. Whelan was interviewed, in the presence of a representative of his union, by Nassau County detectives on June 8, 1993. Written statements were taken from Michaels, Sorto and Ortega at the scene by Nassau County police.

The shooting of Dexter Chandie and Collin Victor was the subject of two investigations. First, an investigation was conducted by the Major Offense Bureau of the Office of the District Attorney of Nassau County. That investigation, as stated in a June 21, 1993 letter from Denis Dillon, the District Attorney of Nassau County, to the Commissioner of the City of Long Beach Police Department, reached the following conclusion:

> Our review of the incident shows that Officer Whelan was justified in firing the shots and accordingly no Grand Jury presentment is warranted. In addition, our investigation shows that Officer Whelan is to be commended for his conduct. His action protected the lives of four occupants of the store.
>
> I believe, had he not taken a brave course of action, it is very possible we would be investigating multiple homicides of the innocent people in the store. His quick response is the very action which police officers are trained for and sworn to perform.

Defts.' Ex. F. On June 21, 1993 Whelan received the Medal of Honor, the highest award conferred by the City of Long Beach Police Department, in recognition of his conduct during the attempted robbery of the Foodtown store.

An investigation was also conducted by the Federal Bureau of Investigation, the results of which were reviewed by the Civil Rights Division of the United States Department of Justice. In a letter to Whelan, dated March 1, 1995, Linda K. Davis, the Chief of the Criminal Section of the Civil Rights Division, concluded as follows with respect to "allegations that you were involved in a criminal violation of the civil rights statutes regarding the deprivation of the civil rights of Dexter Chandie":

> After a careful review of the investigative reports in this matter, and based upon the information currently available to this Department, we have concluded that this matter should be closed and that no further action is warranted.

Defts.' Ex. G.

## DISCUSSION

### A. Summary Judgment Standard.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." The standards for granting summary judgment are well known. It is the movant's burden to demonstrate the absence of any genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, "all justifiable inferences" from the factual record before the court are to be drawn in favor of the non-movant. *Id.* at 255, 106 S.Ct. 2505.

## B. The Section 1983 Claim.

 Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ...." "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254–257, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). There is no question that the rights asserted by Jean Chandie on behalf of her son are rights that are protected by Section 1983. "The right to be free of excessive force is clearly established. That there are constitutional limitations on the use of deadly force ... is also clearly established." *Salim v. Proulx,* 93 F.3d 86, 91 (2d Cir.1996) (citations omitted). A "claim that a police officer used excessive force, including deadly force, is properly... analyzed under the Fourth Amendment's reasonableness standard." *Id.* at 89.[1]

### 1. Officer Whelan.

 The defendants assert that no liability under Section 1983 can lie as to Officer Whelan because he is protected by qualified immunity. In general terms, as reiterated recently by the Supreme Court, the qualified immunity defense " 'hold[s] that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Crawford–El v. Britton,* —— U.S. ——, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998) (quoting *Harlow v. Fitz-*

*gerald,* 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).[2]

The standard for establishing a defense of qualified immunity is not in dispute:

"A qualified immunity defense is established if a) the defendant's action did not violate clearly established law or b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim [v. Proulx],* 93 F.3d at 89 (citations omitted). "The objective reasonableness test is met if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id.* at 91. (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *see also Lennon [v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) ](holding that summary judgment on a qualified immunity defense is appropriate "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances").

*Tierney v. Davidson,* 133 F.3d 189, 197 (2d Cir.1998).

 In cases challenging the use of deadly force, application of the Fourth Amendment's reasonableness standard calls for the court to "examine 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Salim v. Proulx,* 93 F.3d at 91. When employing this test, an officer's actions should "not ... be assessed with 20/20 hindsight. Rather, 'qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances.' "

---

1. The defendants are therefore incorrect when they assert that the standard of review is provided not by the federal Constitution, but by New York statutes regarding the use of deadly force by police officers. Defts.' Mem. at 5–7. Thus, insofar as a state statute authorizes a use of deadly force that does not meet the Fourth Amendment's reasonableness standard, it is unconstitutional. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

2. There is no question that, as a police officer, even though off-duty at the time of the shooting of Dexter Chandie, Whelan is a government official for the purpose of Section 1983. *See, e.g., Oliver v. Cuttler,* 968 F.Supp. 83, 87 (E.D.N.Y. 1997).

*Id.* (quoting *Lennon v. Miller,* 66 F.3d at 424).

■ The undisputed facts establish that the shooting of Dexter Chandie qualifies as reasonable under this standard. As in *Salim,* "the 'immediate threat' criterion controls the outcome of this court's evaluation." 93 F.3d at 91. The undisputed evidence, including the deposition testimony of Whelan and Michaels, and the statements of Michaels, Sorto and Ortega taken at the scene, establish that Whelan had a clear basis to believe that Dexter Chandie and Collin Victor were contemplating inflicting injury upon himself and the other three men. This went well beyond the fact that the four men were being held at gunpoint. Whelan testified that Victor stated that "something is going to happen" should the robbery prove to be insufficiently lucrative. Whelan also testified that Chandie seconded Victor's sentiment by announcing that he was getting "trigger happy." Both Whalen and Michaels testified that Chandie declared that unfortunate consequences would likely result because the Foodtown store did not contain an area where his and Victor's hostages could be locked up once Chandie and Victor were prepared to leave the store. These statements carried the implication of imminent violence. When the opportunity to reach for his gun to protect himself and the other three hostages emerged, Whalen testified that he identified himself as a police officer and did not shoot Chandie until the latter drew his gun and moved toward him.

■ In considering a motion for summary judgment in a deadly force case, the court "may not simply accept what may be a self-serving account by the police officer" and ignore other evidence in the record. *Scott v.* *Henrich,* 39 F.3d 912, 915 (9th Cir.1994), *cert. denied,* 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). There is nothing, however, in the deposition of Michaels, or in the statements of Michaels, Sorto or Ortega taken at the scene, that is at material variance with Whelan's account.[3] There have also been two investigations of the shooting of Dexter Chandie neither of which was conducted by the police department of which Whelan is a member—and both of which concluded that there was no basis to find that the shooting of Dexter Chandie was unjustified. At the very least, then, police officers of reasonable competence could disagree on the legality of Whelan's action. Summary judgment in his favor is therefore warranted.

■ The plaintiff makes no argument that warrants a denial of summary judgment in favor of Whelan. As stated above, the plaintiff does not offer her own version of the facts surrounding the shooting of Dexter Chandie. Rather, she attempts to establish that the record submitted by the defendants is so riddled with inconsistencies that a denial of summary judgment is warranted.[4] However, a review of the asserted inconsistencies reveals that they uniformly involve a lack of complete agreement about immaterial aspects of the attempted robbery of the Foodtown store. Without setting forth here every one of these inconsistencies, it suffices to say that matters such as the precise manner in which Whelan and Michaels engaged in fixing the latter's automobile tire, whether it was Victor or Chandie who asked if anyone besides Whelan or Michaels was in the Foodtown store or the precise sequence that Victor followed in opening the safes in the bookkeeping office are not relevant to the inquiry as to whether Whelan's shooting of Dexter

---

**3.** Neither Sorto nor Ortega was deposed. Although there is no explicit explanation in the record for this, Ortega identifies himself in his witness statement as a citizen of El Salvador who had only arrived in the United States fifteen days before, Defts.' Ex. D, and both men are identified by the plaintiff as having been "unavailable" for deposition. Pltf.'s Mem. at 1.

**4.** It is also asserted by the plaintiff that the purported inconsistencies she proffers in opposition to the instant motion are not the only ones that exist. Others, she asserts, are not mentioned "because it would not be in the best interest of the plaintiff to 'give away' her entire case by red flagging each and every inconsistency noted by her." Pltf.'s Mem at 4, n. 2. Of course, these unmentioned inconsistencies, whatever they may be, can be given no weight in the determination of the instant motion. "[M]otions for summary judgment must be decided on the record as it stands, not on a litigant's visions of what the facts may some day reveal." *Roche v. John Hancock Mutual Life Ins. Co.,* 81 F.3d 249, 253 (1st Cir.1996) (quotation omitted).

Chandie was reasonable under the Fourth Amendment. As stated in *Salim*, Whelan's "actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force. The reasonableness inquiry depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." 93 F.3d at 92. The situation immediately prior to Whelan's action was one of imminent danger to himself and the three other men. The purported inconsistencies therefore do not concern *material* issues of fact, that would serve as a bar to summary judgment. *Cf. Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir.1995) (where police officers sought to justify use of deadly force as necessary to protect bystanders, summary judgment was not warranted where officers' depositions were inconsistent as to the facts concerning the presence of bystanders).

██ The plaintiff also argues that her Section 1983 claim should go to trial because of issues of fact regarding the reasonableness of Whelan's use of hollow point bullets and the number of times that Dexter Chandie was shot. Further, the plaintiff states that the reasonableness of Whelan's action is called into question by the fact that neither Chandie nor Victor fired a single shot in response to Whelan's firing. To conclude, however, that these matters warrant a denial of summary judgment would be to engage in the sort of "20/20 hindsight" of Whelan's action that is not allowed to this court. There is no showing that Whelan violated any rule, statute or case authority in using hollow point bullets. As the defendants point out, this is not surprising given that the plaintiff points to no statute or regulation, federal or state, existing now or in 1993, that forbids the use of these bullets by police officers.[5] Under these circumstances, Whelan's use of hollow point bullets cannot serve to deprive him of the defense of qualified immunity. As to the number of shots fired, there is no basis for the court to hold that

Whelan, acting under extremely dangerous circumstances requiring split-second decision-making, fired an unreasonable number of times. Nor does the fact that neither Chandie nor Victor fired any shots in return raise any material issues of fact as to the reasonableness of Whelan's conduct.

### 2. The City.

██ The plaintiff's Section 1983 claim against the City also cannot withstand a motion for summary judgment. To impose Section 1983 liability upon a municipal entity, a plaintiff must show that the alleged violation resulted from an official policy, custom or practice of the municipality. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A viable claim against a municipal entity under Section 1983 is therefore derivative of a finding that the plaintiff has suffered a deprivation of civil rights. In other words, the claim "has no viability in the absence of underlying individual constitutional liability." *Leone v. Creighton*, 948 F.Supp. 192, 197 (E.D.N.Y.1996). Thus, having found that summary judgment in favor of Whelan is appropriate, summary judgment in favor of the City follows as a matter of law.

### 3. The Plaintiff's Remaining Contentions.

██ The plaintiff has raised certain additional arguments in opposition to summary judgment. First, the plaintiff argues that her ability to prosecute this action has been greatly impeded by the ineffectiveness of her former counsel, Allan L. Brenner, Esq. The court itself has previously acknowledged Mr. Brenner's neglect, having noted in a prior order that "[o]ver the course of more than half a year, counsel for the plaintiff has comprehensively and inexcusably failed to prosecute this action." Order to Show Cause, dated March 17, 1997, at 1. However, the plaintiff secured her current counsel more than a year ago and has thus been able to vigorously oppose the instant motion.

---

5. Indeed, the Court of Appeals for the Second Circuit recently refused to find a manufacturer of hollow point bullets liable for negligence under New York law on the theory that it had not limited the sale of the bullets to law enforcement agencies, but allowed their sale to the general public. *McCarthy v. Olin Corp.*, 119 F.3d 148, 156–57 (2d Cir.1997).

**178**

██ The plaintiff also asserts that her ability to oppose summary judgment has been hindered because the defendants have failed to provide documents requested in discovery. However, many of the documents of which the plaintiff complains are documents that, if they exist at all, would be found in the possession of the Nassau County Police Department. The defendants cannot be charged with the production of such documents. *See, e.g., Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (party can be compelled to produce only documents which it actually possesses or over which it has legal control). Further, once the plaintiff had obtained her present counsel, the court extended the discovery deadline in this action so that materials not obtained as a result of Mr. Brenner's misfeasance might be produced. In the order extending the deadline, the court granted the plaintiff leave to file an application to further extend discovery should she not be able to reach agreement with the defendants regarding the production of additional materials. Order, dated June 30, 1997, at 1–2. No such application was filed by the plaintiff. The original discovery deadline in this action passed over two years ago. The defendants are entitled to have the instant motion heard on the record as it stands.

██ Finally, the plaintiff makes a wholly inadequate effort to oppose summary judgment by making allegations that the shooting of Dexter Chandie was the result of an ongoing "conspiracy" whose participants include Whelan, the City and the Nassau County Police Department. Thus, the shooting is characterized as a "brutal and racist murder," Pltf.'s Mem. at 2, and allegations are made to the effect that the bodies of Dexter Chandie and Collin Victor were transported to the Foodtown store after having been shot elsewhere and that the transcript of Whelan's deposition has been comprehensively altered. Such contentions, utterly without support in the record before the court, cannot serve to bar summary judgment. *See Crawford–El v. Britton,* —— U.S. at ——, 118 S.Ct. at 1592 ("bare allegations of malice [do] not suffice to subject government officials . . . to the costs of trial"); *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) ("con-

clusory statements, conjecture, or speculation" will not defeat motion for summary judgment).

**C. Section 1986 and Section 1988 Claims.**

Section 1986 establishes liability as to those persons who fail to prevent a conspiracy to violate an individual's civil rights. Since, as already discussed, the plaintiff has not set forth sufficient allegations of a conspiracy against Dexter Chandie, no Section 1986 claim lies against the defendants. *See, e.g., Koch v. Mirza,* 869 F.Supp. 1031, 1039 (W.D.N.Y.1994). Similarly, in light of the grant of summary judgment in favor of the defendants as to the plaintiff's Section 1983 claim, the plaintiff's claim for attorneys fees pursuant to Section 1988 must also be dismissed.

**D. The Plaintiff's Motion to Add Additional Parties and Claims.**

Having granted summary judgment to the defendants on the plaintiff's Section 1983 claim, the plaintiff's motion to add additional parties and claims based upon her inadequate allegations of a conspiracy to violate Dexter Chandie's civil rights is denied.

**CONCLUSION**

The defendants' motion for summary judgment is GRANTED. The plaintiff's motion to add additional parties and claims is DENIED. The Clerk of Court is directed to enter judgment in favor of the defendants.

**SO ORDERED.**